IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| THEA JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 04-0779-CV-W-SOW |
| ) | |
| KANSAS CITY LIFE INSURANCE ) | |
| COMPANY, et al, ) | |
| ) | |
| Defendants. ) | |

ORDER

Before the Court are defendants' Motion for Summary Judgment (Doc. #26), plaintiff's Suggestions in Opposition, and defendants' Reply brief. For the reasons stated below, defendants Kansas City Life Insurance Company and Joyce Seuferling's motion is denied.

I. Background

Plaintiff Thea Jackson is a former employee of defendant Kansas City Life Insurance Company (hereinafter "defendant Kansas City Life"). She filed a lawsuit under the Family Medical Leave Act ("FMLA"), claiming that defendant Kansas City Life and Ms. Joyce Seuferling ("defendant Seuferling") violated the FMLA by denying her request for time off to care for her adult son. Both defendants seek summary judgment on plaintiff's claims.

The undisputed material facts relevant to the pending motion are as follows: plaintiff was employed by defendant Kansas City Life from 1989 to August 1, 2003, working in the mail support area. Defendant Seuferling became plaintiff's supervisor in

February 2003. Bob Milroy who was Vice President, New Business/Underwriting supervised defendant Seuferling during the time she was plaintiff's supervisor. Kris Jones also worked at Kansas City Life during that time as the Assistant Director, Human Resources. Defendant Seuferling filled out a performance review on plaintiff in July 2003, noting that plaintiff was meeting expectations in all areas of her position.

It is also undisputed that plaintiff's son, William Gray, lives in California, and is thirty years old. He is married and has two children, ages 4 and 6. Plaintiff discovered on Friday, September 19, 2003, that William Gray was having surgery the following Tuesday, September 23, 2003. On Friday, September 19, 2005, plaintiff went to defendant Seuferling's office to ask for a week off of work because her son was having surgery in California. Defendant Seuferling told plaintiff that she could not allow plaintiff to take vacation because another employee in the mail assembly area was out on jury duty leave. Plaintiff did not have any documentation from William Gray's doctor, but only the information her son had given her. The parties dispute whether plaintiff had discussed William Gray's condition and need for surgery prior to informing defendant Seuferling that she needed time off; the parties disagree as to whether plaintiff knew the extent of her son's injuries or the specific limitations he would have as a result of the surgery. Furthermore, the parties dispute the effect of the surgery on William Gray's range of motion and work performance. On Monday, September 22, 2003, plaintiff sent an email to Bob Milroy asking for time off work. He called defendant Seuferling and told her that plaintiff was not approved to go on vacation, and if she went, her employment would be terminated; defendant Seuferling relayed this message to plaintiff.

Plaintiff did not go to see her son in California and worked the remainder of the week of September 22, 2003.

The parties dispute whether the quality of plaintiff's work performance was slipping during the several months following the July evaluation. Defendants assert that in September 2003, defendant Seuferling made an addendum to plaintiff's performance review at the instruction of Kris Jones to document plaintiff's alleged inadequate performance issues that hade been observed since filling out the performance review in July. Plaintiff disputes this asserted fact, stating that defendant Seuferling was allowed to change that review subsequent to plaintiff's request for leave under FMLA and shortly after plaintiff appealed defendant Seurferling's decision to Bob Milroy, and post date the evaluation. The parties do not dispute that on October 2, 2003, plaintiff met with defendant Seuferling in a conference room to go over the modified review. After completing the review process defendant Seuferling asked plaintiff to sign her performance review. Plaintiff stated that she could not sign the performance review because she disagreed with it. When defendant Seuferling told plaintiff she had to sign it, plaintiff began writing that she did not agree with the review when defendant Seuferling "snatched the paper" and told plaintiff her employment was terminated.

Plaintiff testified that her termination was unfair and a result of requesting time off to be with her son who has having surgery and because she went over defendant Seuferling's head. She believes that defendant Seuferling retaliated against her and used her performance appraisal to fire her.

II. Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Rafos v. Outboard Marien Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party opposing a properly supported motion for summary judgment may not rest upon the allegations contained in the pleadings, "but must set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In reviewing a motion for summary judgment, this Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving any doubts as to the facts or existence of any material fact against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970).

### III. Discussion

#### A. Plaintiff's Entitlement to Benefits Under the FMLA

To establish a prima facie case of retaliation, a plaintiff must first show he or she was entitled to a protected right under the FMLA. Diaz v. Fort Wayne Foundry Corp., 171 F.3d 711, 713 (7th Cir. 1997). An employee is entitled to leave under the FMLA in order to care for his or her child if that child has a "serious health condition." 29 U.S.C.

4

§ 2612(a)(1)(C). An adult child will qualify if he or she is "incapable of self care because of a mental or physical disability." 29 U.S.C. § 2611(12).

1. <u>Serious Health Condition</u>

A serious health condition is defined under the FMLA as "an illness, injury, impairment, or physical or mental condition that involves . . . (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Continuing treatment includes "[a] period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition." 29 U.S.C. § 825.114.

The evidence demonstrates there is a genuine issue of material fact as to whether William Grey had a serious health condition. Mr. Grey's own testimony indicates that he received on-going treatment from his health care provider and was forced to miss approximately seven months of work.

2. <u>Incapable of Self-Care Because of a Physical Disability</u>

A physical disability is a physical "impairment that substantially limits one or more of the major life activities of an individual." 29 C.F.R. § 825.113(c). Similarly, to be incapable of "self-care," under 29 U.S.C. § 2611, an adult child must "require[] active assistance or supervision to provide daily self-care" in at least three of the of the following activities: "grooming and [maintaining personal] hygiene, bathing, dressing . . . eating, cooking, cleaning, shopping, taking public transportation, paying bills, maintaining a residence, using telephone and directories, using a post office, etc." 29 C.F.R. § 825.113. This list provided by the statute is not exhaustive, declaring that

"[a]ctivities of daily living include adaptive activities such as caring appropriately for one's grooming . . ., etc." Id. (emphasis added). Other courts have interpreted the statute similarly. See, e.g., Navarro v. Pfizer Corp., 261 F.3d 90, 96 (1st Cir. 2001) (noting the broad sweep of definitions encompassing self-care); Bagley v. Regis Corp., 2004 WL 2826810, *6 (N.D.Tex. 2004) (including "performing similar kinds of activities" in the list of self-care activities).

Defendants ask this Court to find that plaintiff Jackson was not entitled to a protected right under the FMLA because her son, William Grey, was not incapable of self-care. The Court cannot make such a finding based upon the record before the Court.

First, a jury could determine that Mr. Grey's condition, the limited range of motion in his right arm, is an impairment under 29 C.F.R. § 825.113(c). Furthermore, because Mr. Grey has not been able to work, there is a genuine issue of material fact as to whether this impairment substantially limits a major life activity.

Second, defendants argue that Mr. Grey is not incapable of self-care as required 29 C.F.R. § 825.113 because he was able to perform a certain number of daily activities without active assistance or supervision. However, simply because Mr. Grey was able to perform some of the daily activities listed in 29 C.F.R. § 825.113 does not negate the fact that he may be unable to perform other daily activities, either listed or unlisted. In Navarro v. Pfizer Corp., the First Circuit determined that because of the broad range of activities included in 29 C.F.R. § 825.113, the mere existence of a doctor's note confining plaintiff's daughter to bed indicated the patient's need for active assistance or supervision in completing some daily activities and therefore created a genuine issue of material fact as to her ability to "self-care." 261 F.3d 90, 95-96 (1st Cir. 2001).

Although Mr. Grey admitted to being able to perform some of these daily activities, there exists a genuine issue of material fact as to the extent of his limitations. Mr. Grey testified that after his surgery he was restricted in his range of motion and basically only had use of his left arm, which was particularly difficult because he was right-handed. For example, he was unable to pick up certain things and unable to drive himself without some sort of assisting apparatus.

In <u>Bryant v. Delbar Products, Inc.</u>, the court determined that the plaintiff's son was incapable of self-care because he required assistance cooking, cleaning, and using transportation. 18 F. Supp.2d 799, 803-04 (M.D.Tenn. 1998). In that case, simply because Howard Bryant could feed, bathe and use the bathroom by himself did not necessarily indicate he was incapable of self-care. <u>Id</u>. Defendants argue that Mr. Grey was not incapable of self-care because he was not <u>unable</u> to perform any of the activities about which the defendants questioned him, such as cooking and dressing himself. However, this does not resolve the issue of whether Mr. Grey was incapable of self-care under 29 C.F.R. § 825.113. The list provided by 29 C.F.R. § 825.113 is not exhaustive and contains a very broad range of activities. <u>Navarro</u>, 261 F.3d at 96. Mr. Grey may be unable to complete a whole list of activities not included in the defendants' line of questioning. Furthermore, the statute does not indicate that an adult child will qualify if he is <u>unable</u> to perform certain daily activities, rather that he "requires active assistance or supervision." While Mr. Grey stated that he was able to perform some of these daily activities if he had to, he may have still required active assistance or supervision to complete these activities adequately and safely. Much like the plaintiff's bed-ridden daughter in <u>Navarro</u>, both patients could potentially perform certain daily activities such

as driving or bathing at great peril to themselves or others, but still practically require assistance or supervision.

There is sufficient evidence for the jury to infer that plaintiff's son was incapable of self-care due to the limited use of his right arm, and that plaintiff was entitled to leave as a result.

B. <u>Pretext for Intentional Discrimination</u>

Assuming both that plaintiff is able to establish a prima facie case and defendants have presented a non-retaliatory reason for their actions, plaintiff must show that defendants' proffered reason is merely a pretext. <u>Beal v. Rubbermaid Commer. Prods.</u>, 972 F. Supp. 1216, 1229 (D. Iowa 1997). A showing of coincidental timing is "rarely sufficient to establish a submissible case of retaliatory discharge." <u>Scroggins v. Univ. of Minn.</u>, 221 F.3d 1042, 1045 (8th Cir. 2000). However, some courts have held that the timing of one event, without a pattern, may be adequate to show a casual or temporal connection. <u>Foster v. Time Warner Entm't Co.</u>, 250 F.3d 1189, 1196 (8th Cir. 2001). For example, the Eighth Circuit in <u>O'Bryan v. KTIV Television</u> decided the three months that passed between the time of plaintiff's filing for leave and his actual termination "established, at minimum, a genuine issue of material fact on the elements of his prima face case." 64 F.3d 1188, 1193. The existence of a negative review shortly after a FMLA request, for example, may also be considered retaliatory in the eyes of the jury. <u>Sprenger v. Southern Fed. Home Loan Bank</u>, 253 F.3d 1106, 1114 (8th Cir. 2001).

First, a jury could conclude that plaintiff has at least established a temporal connection between the addendum to her performance review and her termination, which occurred within two weeks after the original request. While this alone is not sufficient to

8
Case 4:04-cv-00779-SOW   Document 33   Filed 10/25/05   Page 8 of 9

demonstrate the existence of a pretext, plaintiff has provided circumstantial evidence from which a jury could determine the reasoning was a pretext. For example, plaintiff has established that she went above defendant Seuferling's head when requesting FMLA leave. From this information alone, a jury could infer that the reason for defendants' actions was closely related to plaintiff's request for FMLA leave and the grounds given by defendants were a pretext.

In sum, because plaintiff has presented circumstantial evidence as to the reasoning behind her poor evaluation and eventual termination, a factual issue remains for a jury to determine.

## IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that defendants' Motion for Summary Judgment (Doc. #26) is denied.

/s/Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

Dated: 10-25-05